## Commonwealth *v.* Berney, Appellant.

*Evidence—Book entries—Car inspector's records—Criminal law—Larceny.*

Generally speaking, the contemporaneous entries made by third persons in their own books in the ordinary course of business are admissible as original evidence where the subject of the entry is within the peculiar knowledge of the person making it; and where no motive to pervert the truth is apparent. It is essential to the competency of such evidence, however, that the person making the entry have personal knowledge of the subject, otherwise the evidence is hearsay and inadmissible.

Where the entry is made by one in discharge of official duty, it must be one which it was the person's duty to make, and which applies to the transaction as part thereof, or which was its useful and proper concomitant. Where the party making the entry is living and competent to testify, it is necessary to produce him. Where he is dead, or, when called as a witness, has no recollection of the facts, but testifies that it was his practice to make all his entries truthfully at the time, and that he believes the entry to be accurate, it is considered original and not hearsay evidence to establish the fact in question.

On an indictment for stealing goods from freight cars a record of car inspection made up by a clerk without knowledge of the facts from written information transmitted by the car inspectors is inadmissible in evidence.

*Criminal law—Larceny—Possession of stolen goods.*

In order to convict a defendant of larceny because of the possession of the stolen property it must be made to appear that the possession was recent. The law does not declare just what this period is; much depends upon the character of the property and the circumstances of the case. But after the lapse of two months an inference of larceny does not arise.

Argued March 7, 1905.   Appeal, No. 18, Oct. T., 1905, by

defendant, from judgment of O. & T. Blair Co., June T., 1904, No. 6, on verdict of guilty in case of Commonwealth v. Harry Berney and Jacob Black. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and HENDERSON, JJ. Reversed.

Indictment for larceny. Before BELL, P. J.

The court charged in part as follows:

[The commonwealth claim that somebody out of those two cars, Cumberland valley No. 705 and St. Louis line 10,557, stole the sixty-eight pigs of tin, and the commonwealth allege that these blocks of tin were stolen after the cars arrived in Altoona; that the testimony of the sealers at Jersey City shows that the cars were sealed there and that the railroad company have a number of inspectors, 120 in number, I believe, whose business it is to inspect all cars that come into the Altoona yard and report whether any seals were broken. The commonwealth produce the record of the railroad company which they keep of reports of seals broken, and this record fails to show any report of the seals broken on the Cumberland valley car or the St. Louis line car; when these cars arrived at Twelfth street the seals were broken. Right here the commonwealth claim that, therefore, the seals must have been broken after they arrived in the Altoona yard, because they call the two clerks whose business it was to inspect the cars after they got down to Twelfth street, and they say when these two cars arrived at Twelfth street the seals were broken. Right here the defense claim that the commonwealth have not shown that any pigs of tin were stolen in Blair county; that they may have been stolen any place between Jersey City and Altoona, and the attorneys for the defense criticise the testimony offered by the commonwealth as to the seals not being broken when the cars entered the Altoona yard.

On the other hand, the commonwealth reply that they have offered the best evidence on this point which is obtainable. That there are 120 inspectors there and it would have been beyond all reason to call these inspectors to prove that no one of them saw this seal broken when it came into the Altoona; that that is asking something beyond reason, and beyond the necessities of a court trial, considering the vast amount of business

that is done by the railroad company, and the modern ways of doing business ; that all the commonwealth could do would be to prove that no report of the broken seal was made to them.] [7]

[If you conclude that the tin which Mr. Berney shipped to Philadelphia was stolen, then the next question for your determination is as to whether Mr. Black and Mr. Berney received this stolen tin knowing it to be stolen. On that point the commonwealth in the first place call Mr. Porta, who says that he lives in Millville, and lives next door neighbor to Mr. Black, and he says one morning in September of 1903—you will recollect that the Cumberland valley car No. 705 arrived in Altoona in July of that year—that one morning in September of 1903 he was awakened out of his sleep by hearing some noise down at his stable as he supposed, his stable adjoining that of Mr. Black. I think Mr. Porta said he thought one of his horses might have the colic and fallen down, and he says he got up and went down at four o'clock in the morning and looked through a crack in his stable into the adjoining stable of Mr. Black and saw Mr. Black and some other man to him unknown throwing from a wagon—the horses had been taken out of the wagon—in the stable they were throwing off the wagon pigs of metal, which he says looked like the pigs offered in evidence. Then he says he got up and started to the mountain for a load of coal, and about the time he was starting Mr. Black made a fire in Mr. Black's yard near his stable and began to melt some metal in a tin kettle, and he says that when he came back the melting was still going on, and going on still in the evening, and he says that he looked over the fence and saw Mr. Black with some ladle or something in the nature of a ladle, lifting the melted metal out of a large iron pot and running it into what Mr. Porta said at one time was a crock and at another time was a tub, and which, I believe, he finally said was an iron pot. Then the commonwealth called Mr. Hewitt. He says that on December 29, of that year he was called on by Mr. Black to haul a load of material to Hollidaysburg, and that he went to the stable of Mr. Black the next morning, December 30, and did haul four barrels which were very heavy —you will recollect how he described them as falling on his foot—to Hollidaysburg, and that they were shipped by Mr.

Berney to Philadelphia to the Ajax Metal Company.    The vice president and secretary of the Ajax Metal Company is called and he testifies that in the fall of 1903—I believe the shipments were all made in December, 1903—between seven and eight thousand pounds—I am not sure of the exact amount—of block tin were shipped by Mr. Berney to his company, and he says that the tin was all in the form of the circular blocks which have been produced in evidence, and, while Mr. Berney shipped it, the first two shipments were made in the name of Lang, and the letters of Mr. Berney have been produced which show that while he was shipping it himself he was shipping two shipments at least in the name of Lang.    Now as Mr. Hicks has argued to you, it is not necessary for the commonwealth to show by direct evidence knowledge on the part of defendants that the goods were stolen.    A jury would be warranted in finding such guilty knowledge from circumstances, because we have no method of unfolding the secrets of any man's mind; we cannot look into his heart and see his mind at all and see just how his mind operates, and what his knowledge was, but guilty knowledge can be inferred from circumstances.    But the circumstances must be such as to bring the jury to a conclusion beyond a reasonable doubt that there was guilty knowledge.    The commonwealth allege that there was Mr. Black in the fall of 1903 reducing pigs of tin into scrap tin; that in the form of pigs of tin the tin would be worth some twenty-seven cents, whereas in form to which he reduced it by the use of the pot as testified to by Mr. Porta it was only worth some twenty-two cents, and the commonwealth ask, Why did Mr. Black go to the trouble of hauling that tin to Hollidaysburg to ship it?    Why didn't he take it down to the Altoona freight office in the form of pigs, its highest commercial value form, and ship it to Philadelphia, and why did Mr. Berney ship it in the name of Lang, and why did he ship it as lead and why did Mr. Black say it was lead when Mr. Hewitt asked him what the barrels contained?]  [10]

Verdict of guilty, upon which judgment of sentence was passed.    Defendant appealed.

*Errors assigned* were (1) admission in evidence of car inspectors' record; (7, 10) above instructions, quoting them.

*R. A. Henderson* and *A. V. Dively*, for appellants.—The record of car inspectors was hearsay evidence : Chaffee v. United States, 85 U. S. 516 ; Thomas v. Price, 30 Md. 483; Butler v. Estrella Raisin Vineyard Co., 124 Cal. 239 (56 Pac. Repr. 1040) ; Whitley Grocery Co. v. Roach, 115 Ga. 918 (42 S. E. Repr. 282) ; Meadows v. Frost, 115 Ga. 1002 (42 S. E. Repr. 390) ; Penna. Co. v. McCaffrey, 173 Ill. 169 (50 N. E. Repr. 713) ; Swan v. Thurman, 112 Mich. 416 (70 N. W. Repr. 1023) ; Carlton v. Carey, 83 Minn. 232 (86 N. W. Repr. 85) ; New Jersey Zinc & Iron Co. v. Lehigh Zinc & Iron Co., 35 Atl. Repr. 915 ; Mayor, etc., of New York v. Second Ave. R. R. Co., 102 N. Y. 572 (7 N. E. Repr. 905) ; Tingley v. Land Co., 9 Wash. 34 (36 Pac. Repr. 1098).

Account books are never admissible as negative evidence : Sanborn v. Ins. Co., 82 Mass. 448 ; Keim v. Rush, 5 W. & S. 377.

Possession of stolen property must be recent, after the theft, in order to raise the presumption of theft : State v. Wolffe, 15 Mo. 168; State v. Floyd, 15 Mo. 349 ; State v. Creson, 38 Mo. 372 ; State v. Williams, 54 Mo. 170 ; State v. Robbins, 65 Mo. 443.

*W. L. Hicks*, for appellee, filed no printed brief.

OPINION BY HENDERSON, J., April 17, 1905 :

For the purpose of showing that the larceny involved in the charge against the defendants was committed within the county, the commonwealth introduced the record of car inspection kept by the Pennsylvania Railroad Company at Altoona. This record was made up by a clerk or clerks of the company from reports sent in by car inspectors employed in the freight yard at that city. The reports were made on slips or memorandum papers and sent by messengers to the office, and a tabulation or summary was made up from these slips. The inspectors were instructed to report any broken seals found on cars inspected by them, and the record made up in the office showed what cars were reported by the inspectors as having had broken seals thereon at the time of the inspection. It appeared from other evidence that the property which was the subject of larceny had been loaded in two freight cars in Jersey City, and

that the cars were sealed at that place. It was deemed important to the case of the commonwealth to show that the seals were intact on arrival of the cars in Altoona, and the absence of any report that they were not in that condition was held to be admissible to establish the fact. It appeared on an examination of the custodian of the book, that he had no knowledge of the facts therein exhibited, but that it was made up from the written information transmitted by the car inspectors ; and this is the serious objection to the evidence.

Generally speaking the contemporaneous entries made by third persons in their own books in the ordinary course of business are admissible as original evidence where the subject of the entry is within the peculiar knowledge of the person making it, and where no motive to pervert the truth is apparent. It is essential to the competency of such evidence, however, that the person making the entry have personal knowledge of the subject, otherwise the evidence is hearsay and inadmissible.

Where the entry is made by one in discharge of official duty, it must be one which it was the person's duty to make, and which applies to the transaction as part thereof, or which was its useful and proper concomitant. Where the party making the entry is living and competent to testify, it is necessary to produce him. Where he is dead, or, when called as a witness, has no recollection of the facts, but testifies that it was his practice to make all his entries truthfully at the time, and that he believes the entry to be accurate, it is considered original and not hearsay evidence to establish the fact in question : Doe v. Turford, 3 B. & Ad. 890 ; Nicholls v. Webb, 21 U. S. 326 ; 1 Greenleaf's Ev., sec. 115 ; Farmers' Bank v. Whitehill, 16 S. & R. 89 ; Chaffee v. United States, 85 U. S. 516 ; Abbott's Trial Ev. 398 ; Thomas v. Price, 30 Md. 483.

In discussing this subject in Chaffee v. United States, 85 U. S. 516, Justice FIELDS said :

" That rule, with some exceptions, not including the present case, requires for the admissibility of the entries not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts and be corroborated by their testimony if living and accessible, or by proof of their handwriting if

dead or insane or beyond the reach of the process or commission of the court. The testimony of living witnesses, personally cognizant of the facts of which they speak, given under the sanction of an oath in open court where they may be subjected to cross-examination affords the greatest security for truth."

Applying this rule to the evidence under consideration, it was incompetent for the purpose for which it was offered. The record was not only made by one without knowledge of the facts, but it was not the report of the inspectors. It was what the learned trial judge appropriately denominated a "summary of the report." Whether the original slips were in existence or not does not appear, nor was any attempt made to show that the summary made up by the clerk was true. The diligence and accuracy of the inspector, and the fidelity of the messenger stand between the record and the fact sought to be established by its introduction. It could hardly be expected that the inspectors would remember the inspection of the particular cars ; and reports or memorandums made by them at the time might be used by them for the purpose of establishing the fact of inspection; and from such fact and refreshing their recollection by reference to the reports prepared by them they might be able to testify that the seals of the cars were in good condition when they inspected them because of their practice of noting in the report any defect in that respect. No logical inference of action and care by the inspectors and messengers is deducible from the office record offered by the commonweath. Subject to the well known exceptions, the law rejects verbal or written reports of transactions given by persons, when offered as evidence, as hearsay, and the rule applies even if no better evidence is to be found : 1 Greenleaf's Ev. sec. 125 ; 1 Phil. Ev. 209. The right of a defendant to be confronted by the witnesses against him and to test the truth of their evidence by cross-examination, is too valuable to be disregarded and the exceptions to which we have referred ought not to be enlarged except from manifest necessity. We are of the opinion, therefore, that the objection to the admission of the evidence referred to must be sustained.

There was sufficient evidence of the identity of the property found in the possession of the defendants to warrant the sub-

mission of the case to the jury. The peculiar quality of the property, its quantity, its location, and the suspicious conduct of the defendants with reference thereto, coupled with the fact that a larceny was established by the evidence, justified the submission of the case on the identification of the goods.

The objection that a conviction of the defendant Black could not be sustained because the evidence tended to establish the crime of larceny is not well taken. Black's first connection with the property was about two months after the larceny. There is some evidence in the testimony of the witness Porta, from which the jury might have concluded that the property was taken to Black's place by a third person. In order to convict the defendant of larceny because of the possession of the stolen property it must be made to appear that the possession was recent. The law does not declare just what this period is ; much depends upon the character of the property and the circumstances of the case. But after the lapse of time shown by the commonwealth's evidence an inference of larceny does not necessarily arise. The facts disclosed by the evidence in addition to the possession warranted the inference by the jury of receiving rather than larceny. We find no substantial error except that relating to the admission of the record of car inspection, as set forth in the second, third, fourth and thirteenth assignments. The judgment is reversed and a venire facias de novo awarded.