# Commonwealth *v.* Weaver, Appellant.

*Evidence—Expert witnesses—Hypothetical questions—Cross-examination.*

The rules that apply to the framing of hypothetical questions to experts upon an examination in chief are not so strictly enforced upon cross-examination. Great liberty is allowed. For the purpose of testing the accuracy or credibility of the expert or the value of his opinions, he may be interrogated as to pertinent hypothetical cases concerning which no evidence has been given. The extent to which the examination may go in respect to such collateral matters rests in the sound discretion of the court.

*Criminal law—Abortion—Evidence—Other crime.*

On the trial of an indictment for abortion evidence is admissible that the defendant committed a similar offense upon the body of the same woman, in the same manner, in the same place, and at the instance of the same person, only a few months prior to the alleged commission of the offense charged in the indictment.

*Criminal law—Jury list—Technical odbjection.*

On the trial of a criminal indictment the prisoner cannot object that the list of jurors, whose names were placed in the wheel for the current year, which was on file in the prothonotary's office lacked the certificate required by the Act of March 18, 1874, Sec. 3, P. L. 46. Such objection should be raised on a motion to quash the bill before the defendant enters a plea. It cannot be raised after the rendition of a verdict.

*Criminal law—Abortion—Accomplice.*

A woman upon whom an abortion is committed is not an accomplice of the person who commits the act, and her testimony is to

be covered by the ordinary rules of evidence, and not those that relate to an accomplice in so far as corroboration is concerned.

*Criminal law—Arrest of judgment—Record.*
A judgment in a criminal case will only be arrested from intrinsic causes appearing on the face of the record.

Argued Oct. 20, 1915.   Appeal, No. 296, Oct. T., 1915, by defendant, from judgment of Q. S. Bucks Co., Dec. T., 1914, No. 35, on verdict of guilty in case of Com. v. Milton Weaver.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Indictment for abortion.   Before RYAN, P. J.

At the trial the jury returned a verdict of guilty.

On a motion in arrest of judgment and for a new trial RYAN, P. J., filed the following opinion:

The defendant was indicted for procuring an abortion upon the body of one Elizabeth Shelly, under the 87th and 88th Sections of the Act of March 31, 1860, P. L. 404, and convicted upon four of the five counts contained in the bill of indictment.   He has filed motions in arrest of judgment and for a new trial.   In support of the latter eighteen reasons have been presented.   The first and second reasons aver that the verdict was against the evidence and the weight of the evidence.   They are without merit.   Two witnesses testified positively to the defendant's acts which constituted the offense charged against him.   The said Elizabeth Shelly and one W. W. Collyr stated upon the stand that they went to the office of the defendant at Richlandtown in this county on three successive occasions in July, August and September, 1914, Elizabeth Shelly being pregnant at the time, on each of which visits the defendant used a metal instrument upon the person of the said Elizabeth Shelly and gave her medicine in the form of pills, for the purpose of producing an abortion.   Collyr testified also that before their first visit to the defendant's office in July, he called upon the latter and arranged for the operation.   According

to undisputed evidence Elizabeth Shelly was taken to the Abington Memorial Hospital on September 22, 1914, and operated upon. She was, according to the testimony of the operating surgeon, Dr. Milton K. Neiffer, and Dr. Alvin M. Struse, who assisted him, suffering from a septic condition produced, according to Dr. Neiffer by "a mechanically interrupted pregnancy," and, in the opinion of Dr. Struse by "a criminal abortion ......done by an expert hand." The defendant denied the charge. He called numerous medical experts who testified that in their opinion it would not have been possible to have performed the operation in the manner described by Elizabeth Shelly and Collyr, in the position in which they said she was placed by the defendant at the time. Other witnesses did not see Elizabeth Shelly and Collyr at the defendant's office at the time when they declared they were there, although these witnesses claimed to have been there at the times specified. All this testimony was for the jury. If the Commonwealth's witnesses were to be believed, the conviction was warranted. The question of their credibility was for the jury. There was ample testimony, if believed, to sustain the conviction. The third, fourth and fifth reasons complain of hypothetical questions asked by the district attorney. It is averred in substance that they were based upon facts not in evidence and ignored material facts proved. The particular questions complained of are not indicated. In the brief of defendant certain questions are specified as open to the objection made, but the brief is not part of the record. This practice is open to criticism. The alleged errors of the court ought to be set out with such particularity in the reasons filed that no misunderstanding of what is meant may be possible. However, that the defendant may have the benefit of the court's consideration of every matter of which he intended to complain, we take up the several questions alleged to have been improperly allowed. Elizabeth Shelly, the Commonwealth's witness, upon cross-

examination testified as follows (page 34) : "Q. You
were sitting on a chair or table?  A. Sitting on a sort
of light table.  Q. Sitting on a kind of operating table?
A. Yes.  Q. Did it have a back like this table?  A.
Along the wall.  Q. It had no back to it?  A. No.  Q.
A sort of table like this one here (indicating).  A sort
of operating table?  A. Yes.  Q. He placed you upon
the table with your back against the wall?  A. Yes.  Q.
And then he inserted the· instrument in your person
which you have described?  A. Yes.  Q. I suppose he
did it on each occasion that you have testified to that he
did it, that is in August, etc.?  A. Yes.  Q. And Sep-
tember?  A. Yes." W. W. Collyr, on page 74, on cross-
examination said : "Q. Did Miss Shelly disrobe?  A.
No.  Q. She didn't take her clothes off?  A. No.  Q.
She sat on a table and you say he inserted a bougie?  A.
Yes."  Dr. John A. Fell, a medical expert called by the
defendant, on page 211, was asked by the district at-
torney on cross-examination, "It would be difficult for
you to say whether or not such an operation could have
been performed on this girl when she was sitting on the
table, without her specifying very particularly what her
position was on the table.  Is not that true?"  To which
the witness replied, "Yes."  The district attorney then
asked the following questions : "Q. For instance, if she
had been sitting on the edge of the table, say with her
buttocks on the edge of the table and leaning against the
wall, so that she was partly or almost entirely in a re-
clining position, and her heels on the edge of the table or
on chairs, with the heels and legs apart—such an opera-
tion would be practically as easy to perform as if she had
been prone upon the table, would it not?"  (The wit-
ness's answer was : "I could say I don't think it would be
as easy to perform").  Another question referred to is
the following asked the same witness : "With her back
against the wall, lying partly back.  In other words, is
it not possible that she might still have been in the posi-
tion which she would call sitting and still be in a posi-

tion where the operation could be performed?" (The witness answered, "I think it would be possible, but I don't think it would be probable.") Dr. Oliver H. Fretz was asked (page 230) on cross-examination: "Q. I suppose it would be impossible for you to say that such an operation could be performed unless you knew exactly in what position the girl sat. A. Yes; it would be impossible unless I knew the exact position. Q. For instance, take someone in a chair, and they were to slide forward to the end and lean back—that would give some idea of the position. Mr. James: she wasn't sitting in a chair. Q. Would it be possible to perform an operation, sliding forward on the table with the parts out on the edge of the table?" (Witness answered, "I would think it rather improbable. I should think that would be an awkward position to have, especially for a physician.") Dr. Jonathan R. Umstead was asked (page 234), "Q. Suppose the girl were forward on the edge of the table and leaning back, with the private part exposed on the table, would it not be possible then?" (Witness answered, "I don't see how she could sit in that position; she would slide off the table for you.") All of the foregoing questions were asked upon cross-examination by the district attorney of experts called by the defendant. The testimony of both Elizabeth Shelly and Collyr as to her position upon the table is very scant. Both speak of her "sitting" on the table. She adds upon cross-examination "with her back against the wall." She assented to the question of the counsel for defendant whether that was not her position. The defendant himself, in his examination in chief, testified that he had a table in his office, with a flat top, "exactly 2 feet 4 inches wide and 5 feet long," with a spread over it and a little pillow at one end (page 161). The cross-examination was quite within the limits allowed. The same rules that apply to the framing of hypothetical questions to experts upon an examination in chief are not so strictly enforced upon cross-examination. Great liberty is al-

lowed. "For the purpose of testing the accuracy or credibility of the expert, or the value of his opinions, he may be interrogated as to pertinent hypothetical cases concerning which no evidence has been given. The extent to which the examination may go in respect to such collateral matters rests in the sound discretion of the court......" Jones on Evidence. Section 389 (391). See notes 42 and 43. See also Chamberlayne on Evidence, Vol. 3, Sec. 2479. Dr. Alvin M. Struse, a witness for the Commonwealth, was also asked in chief by the district attorney, "If a woman were sitting on the edge of the table, reclining back against the wall, partially reclining against the wall, can it be possible to perform any operation upon the private parts or uterus?" This question was properly allowed. Accepting the testimony of the witnesses, Miss Shelly and Collyr, that she sat on the table in defendant's office and the defendant's testimony that the table was exactly two feet four inches wide, this interrogatory embraced facts supported by testimony in the case. To have sat upon the table in such a position as made it possible to perform the operation and had her back against the wall the woman must have reclined to some extent. The medical witnesses called for the defense persisted in construing "to sit" to mean necessarily to place the private parts in such a position as to be inaccessible. It cannot however be so construed. The term is sometimes in common usage applied to just such a position as the district attorney suggested in this question. The third, fourth and fifth reasons cannot be sustained. The sixth reason complains that W. W. Collyr was allowed "to testify to alleged offenses of the same character averred to have been committed by the defendant on dates and times not laid in the bill of indictment, nor any court thereof." This relates to Collyr's testimony that he and Miss Shelly had gone to the defendant's office in February or March preceding the date of the offense charged in the bill, when defendant had performed an operation of the same char-

acter upon her.    While it is true that a defendant cannot be convicted of an offense charged merely because he has committed another offense of the same kind at another time, such evidence is admissible under some circumstances.    In Goersen v. Commonwealth, 99 Pa. 388, the Supreme Court declares that evidence of another offense by the defendant may be given where the purpose is "to establish identity; to show the act charged was intentional and wilful, not accidental; to rebut any inference of mistake; in case of death by poison, to prove the defendant knew the substance administered, to be poison; to show him to be one of an organization banded together to commit crimes of the kind charged; and to connect the other offense with the one charged, as part of the same transaction."    In that case the defendant was upon trial for the murder of his wife alleged to have been committed by the administration of poison.    The admission of evidence that a Mrs. Souder, who lived in the defendant's house died of poison administered by him, a few days before the death of his wife was approved.    It appeared that the arsenic found in the stomach of each of the murdered women was the same.    The evidence was declared to be admissible as showing a design on the part of the defendant to obtain the property of Mrs. Souder and his wife and to rebut the theory that the death of Mrs. Goersen was the result of accident or suicide or the negligent or ignorant use or administering of arsenic by either her or her husband.    In Swan v. Commonwealth, 104 Pa. 218, Mr. Justice CLARK says: "To make one criminal act evidence of another, some connection must be traced in the general design, purpose or plan of the defendant, or it may be shown by such circumstances of identification, as necessarily tends to establish that the person who committed one must have been guilty of the other.    The collateral or extraneous offense must form a link in the chain of circumstances or proofs relied upon for conviction; as an isolated or disconnected fact it is of no consequence; a

defendant cannot be convicted of the offense charged
simply because he is guilty of another offense." In the
case at bar the evidence of the other offense tended to
show a general design, purpose or plan of the defendant
to engage in the practice of criminal abortion. The
other offense testified to was committed upon the body of
the same woman, in the same manner, at the same place
and at the same instance of the same person, but a few
months prior to the alleged commission of the offense
charged in the bill of indictment. We think it is within
the rule laid down and followed in the cases above cited.
Reason seven complains that counsel for the defendant
was not permitted to ask W. W. Collyr "whether or not
he was a married man, whether or not his wife was liv-
ing with him, whether or not he had any children, etc.,
for the purpose of affecting his credibility." Just how
answers to such questions would have affected his credi-
bility was not apparent to the court at the time they
were propounded and is not now. The court's power to
control cross-examination within proper limits cannot
be questioned. The eighth and ninth reasons allege that
the district attorney made remarks in the presence of
the jury that were prejudicial to the defendant. In the
eighth reason it is averred that he remarked "that the
items therein contained which were specially offered
were made up for the purpose of the trial." We are
referred to page 167 of the notes of testimony, but the
notes do not sustain this allegation. The district at-
torney appears upon cross-examination of the defendant
to have asked this question, in reference to a book of
accounts kept and referred to by the defendant: "Q.
Didn't you fix up this book that you have since you have
been charged with this crime?" to which the defendant
replied, "Positively not. It is taken down just as they
came, just as they were then." The cross-examination
continues, "Q. Didn't you make up these accounts en-
tirely as to Dr. Collyr since you were charged with this
crime? Positively not, I said so at the hearing that I

had everything taken down.   Q. You didn't have the book there though, did you?   A. May I explain?   Mr. James: I ask to have a juror withdrawn.   Motion denied."   It was the theory of the Commonwealth that this book was a fraud.   The cross-examination was pertinent and there was no impropriety in the form of the district attorney's questions.   The tenth, eleventh and twelfth reasons allege that the list of jurors, whose names were placed in the wheel for the current year, which was on file in the prothonotary's office, lacked the certificate required by the Act of March 18, 1874, Section 3, P. L. 46. This objection should have been raised on a motion to quash the bill before the defendant entered his plea. Commonwealth v. Freeman, 166 Pa. 332.   It cannot be raised now after the rendition of the verdict.   See Act of March 31, 1860, Section 53, P. L. 427.   Had the question been raised by a motion to quash before a plea was entered, leave might have been granted to amend the list of jurors by attaching the required certificate nunc pro tunc, provided the filling of the wheel had been done according to law.   Commonwealth v. Byrne, et al., 1 Kulp 378.   Where it is not alleged or shown that injury was done to the prisoner, judgment will not be reversed for failure to comply strictly with the provisions of the laws with regard to the selection of jurors.   Commonwealth v. Zillafrow, 207 Pa. 274.   The first additional reason complains of the court's refusal to affirm the second, sixth and eleventh points for charge submitted by the defendant.   The second point was as follows: "While Elizabeth Shelly, who avers that an abortion was committed upon her, or a miscarriage produced by the defendant, cannot herself be convicted of the alleged offense, or held responsible as an accomplice, yet, under the testimony, her moral guilt is clear, as she is involved in the transaction, and this is a proper circumstance for the jury to consider in determining her credibility, and her testimony should be received with caution, and, unless the jury can find that her testimony had been corrob-

orated by disinterested evidence, the defendant should not be convicted." The court answered the first point which was in substance the same as the second except that it asked the court to say that the testimony of Miss Shelly "should be received with great caution by the jury," as follows: "This point is refused. The witness is not an accomplice under the authority of our courts in this State and her testimony is to be governed by the ordinary rules of evidence and not those of an accomplice in so far as they relate to corroboration. The same tests of credibility are to be applied as in the case of any witness. The moral turpitude involved in her conduct in voluntarily submitting to the production of the alleged abortion is a circumstance to be taken into account in this connection." Of this instruction there is no complaint. The court could not properly say to the jury that they must not believe Elizabeth Shelly unless her testimony was corroborated by disinterested witnesses. The question of her credibility was for the jury. The sixth point was as follows: "There being no other evidence in this case to connect the defendant with the perpetration or attempted perpetration of the alleged offense excepting that of W. W. Collyr, a self-confessed accomplice, and of Elizabeth Shelly, who, by submitting to the alleged operation, is involved in the moral turpitude of the offense, it would therefore be unsafe to convict the defendant." This point was properly declined. The jury were fully and correctly instructed upon the law relating to the testimony of accomplices in the general charge. The court also called the jury's attention to the moral turpitude of the act of Elizabeth Shelly in submitting to the operation. The credibility of the witnesses was properly left to the jury. This point was properly declined as was the eleventh point, which asked the court to direct a verdict of not guilty. There is no merit whatever in the second additional reason. The third additional reason cannot be sustained. It complains that Dr. Struse was permitted to express the opin-

ion that Miss Shelly's condition when brought to the hospital was due to a criminal abortion performed by an expert hand. Dr. Struse was the resident physician of the hospital at the time, a graduate of Jefferson Medical College, and assisted Dr. Neiffer in the performance of the operation. He had therefore the opportunity to examine the person of Miss Shelly to such an extent as to acquire a full knowledge of her physical condition at the time, and being a physician he was qualified to express an opinion as to what that condition indicated. The fourth reason relates to a question that has already been considered under the discussion of the third, fourth and fifth original reasons, and the fifth additional reason is but a repetition of the objection, which they raise to the district attorney's cross-examination of the medical experts who were called. The sixth additional reason which complains of the court's leaving it to the jury to determine what Elizabeth Shelly meant by sitting on the table, need not be discussed. It was obviously a matter for the consideration of the jury and determination by them. They were not bound to accept the opinions of the medical men on that point. Counsel for the defendant had it in their power to elicit from Elizabeth Shelly exactly what was her position upon the table at the time she says the operation took place. She was subject to cross-examination and could and should have been thoroughly cross-examined upon that point. Why her testimony was not made more clear does not appear. The last additional reason complains of the court's refusal to withdraw a juror while the district attorney was cross-examining the defendant on the subject of his book of charges. The objection to the questions used has already been considered. This reason is also without merit. The three reasons filed in support of the motion in arrest of judgment are identical with reasons ten, eleven and twelve filed in support of the motion for a new trial. They have already been considered in that connection. They do not constitute grounds for an ar-

rest of judgment, which must arise from intrinsic causes appearing on the face of the record. Sadler on Criminal Procedure, Section 516. Judgment can only be arrested in criminal cases for causes appearing upon the face of the record; this is a general rule and is well settled: Swan v. Commonwealth, 104 Pa. 218. The motion here is based upon a matter alleged to exist upon the records of the Court of Common Pleas. We have, however, considered the objection raised, upon its merits, in connection with the motion for a new trial. After a careful review of the testimony and charge in this case we have reached the conclusion that no substantial error in the trial, prejudicial to the defendant, has been disclosed. The verdict was warranted under the evidence and the conviction must be sustained.

Now, to wit, September 13, 1915, the motions in arrest of judgment and for a new trial are overruled.

*Errors assigned* were various rulings and instructions.

*J. Freeman Hendricks* and *Howard I. James,* for appellant.—Hypothetical questions may not include facts not warranted by the evidence: Gillman v. Media, Etc., Ry., 224 Pa. 267; Coyle v. Com., 104 Pa. 117; Zeigler v. Simplex Foundation Co., 228 Pa. 64.

The evidence was insufficient to sanction the verdict and should have been withdrawn from the jury: Lonzer v. Lehigh Val. R. R. Co., 196 Pa. 610; Cunningham v. Smith, 70 Pa. 450; Hyatt v. Johnston, 91 Pa. 196; Longenecker v. Penna. R. R. Co., 105 Pa. 328.

Evidence of the commission of another act is not admissible to prove act charged: Com. v. Saulsbury, 152 Pa. 554; Snyder v. Com., 85 Pa. 519; Com. v. House, 223 Pa. 487; Com. v. Shanor, 29 Pa. Superior Ct. 358.

Failure of jury commissioners to certify and sign jury list as required by Act of 1874, invalidates judgment: Brown v. Com., 73 Pa. 321.

571, (1915).]        Opinion of the Court.

*Calvin S. Boyer,* District Attorney, for appellee

PER CURIAM, December 20, 1915:

All of the questions raised by the assignments of error are clearly stated and fully considered in the opinion filed by the learned trial judge in overruling the defendant's motion in arrest of judgment and for new trial. Notwithstanding the able and learned argument of appellant's counsel we are unanimously of opinion that they were correctly decided and that further discussion by us is not needed in order to clearly present the questions involved or to vindicate the conclusion at which we have arrived. The assignments of error are overruled, the judgment is affirmed, and the record is remitted to the Court of Quarter Sessions of Bucks County for the purpose of execution, and to that end it is ordered that the defendant appear in that court at such time as he may be there called, and that he be by that court committed until he has complied with his sentence, or any part of it that had not been performed at the time this appeal became a supersedeas.