Commonwealth *v.* Sindel et al., Appellants.

356

Argued March 17, 1965. Before ERVIN, P. J., WRIGHT,
WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ.
(FLOOD, J., absent).

*Irving Wilson Coleman,* for appellant.

*Edwin P. Rome,* with him *Morton Witkin,* and *Blank, Rudenko, Klaus & Rome,* and *Witkin & Egan,* for appellant.

*John Watts Barrett,* Assistant District Attorney, with him *Bernard V. O'Hare,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., April 15, 1965:

At No. 200 September Session, 1963, Dr. Elias A. Sindel was indicted for the crime of abortion upon Barbara Feraldo on or about March 14, 1963.

At No. 201 of the same session J. Tyler Kulik and Dr. Sindel were indicted for the crime of conspiracy to have Dr. Sindel perform the abortion aforesaid on said Barbara Feraldo.

The indictments were consolidated for trial which resulted in verdicts of guilty on both indictments. Motions for new trials and in arrest of judgment having been overruled and judgments of sentence imposed, these appeals followed.

### TRIAL ERRORS—CONSOLIDATION

Each appellant complains that his motion for a separate trial was refused. The court consolidated the

two indictments for trial because the facts and circumstances were interwoven and involved the same girl, namely, Barbara Feraldo. In *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A. 2d 57 (1959), affirmed 399 Pa. 387, 160 A. 2d 407 (1960), cert. denied, 364 U.S. 899, 81 S. Ct. 233, 5 L. Ed. 2d 194, a case vastly more involved than the present one, charges of conspiracy were consolidated for trial with charges of fraudulent pretense against two of five alleged conspirators. Therein President Judge RHODES, recently retired from this Court, stated the law on the subject of consolidation, with which we are in accord and which applies to the present case.[1] We conclude there was no abuse of discretion by the lower court in consolidating for trial the indictments in the present case.

### ADMISSIBILITY OF TESTIMONY OF JUDY SNYDER

Judy Snyder, a witness for the Commonwealth, was permitted over the objection of both defendants to give testimony that she had an experience with Kulik and Dr. Sindel that paralleled that of Barbara Feraldo in practically every particular and at about the same time. In his instruction to the jury the trial judge explained that there were no charges against either defendant which concerned Judy Snyder but that her testimony was submitted solely for the purpose of establishing the intent of Kulik and Dr. Sindel in their activities concerning Barbara Feraldo and "to show a plan of operation, a plan of their operation; that this plan wasn't done one time, but it was done more than once; it was done in the same pattern, the mode or plan or pattern of operation." The general rule is that on a prosecution for a particular crime evidence which

---

[1] "Since the indictments charge offenses which were not repugnant but in fact part of and related to the general scheme, their consolidation was not an abuse of discretion."

shows or tends to show that the accused has committed another crime, wholly independent of and unconnected with that for which he is on trial and even though it is a crime of the same sort, is irrelevant and inadmissible. An exception to this rule is that evidence of an independent crime of the same nature and not too distant in time is admissible if it shows a plan, scheme, motive and design. *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963), cert. denied, 377 U.S. 999, 84 S. Ct. 1930, 12 L. Ed. 2d 1049; *Commonwealth v. Weaver,* 61 Pa. Superior Ct. 571 (1915).

In appellant Sindel's brief it is stated that, "Judy Snyder's testimony . . . shows merely an abortion upon her by Kulik and later medical treatment administered by Dr. Sindel," and nothing indicating an unlawful agreement or conspiracy. This, of course, was the main issue of the case, i.e., was Dr. Sindel in agreement with Kulik to perform an abortion or complete an abortion on Barbara Feraldo which Kulik had attempted without success or was he performing a lawful medical service on her as he would have done on an ordinary patient in need of emergency medical attention. The intent of Dr. Sindel and of Kulik has to be demonstrated by the Commonwealth in proving its case against them. The intent of persons is difficult to determine when it is not expressed, which is rare in matters of this nature. This is the reason for allowing testimony of other acts of similar nature not too distant in time and we agree with the court below that this was a situation where such evidence was admissible. It was for the jury to determine whether the attendance of Barbara Feraldo by Dr. Sindel was lawfully or unlawfully intended. The jury could have determined that in either or both cases, that relating to Judy Snyder as well as Barbara Feraldo, the services of Dr. Sindel were lawful and within the scope of ordinary emergency requirements, or it could have found that the treatment of Barbara

was pursuant to an unlawful plan or arrangement between Dr. Sindel and Kulik. The jury was entitled to consider the other acts of Dr. Sindel and Kulik in relation to Judy Snyder to resolve the issue relating to Barbara Feraldo.

## TACIT ADMISSION OF JUDY SNYDER'S STATEMENT

After Judy Snyder had testified fully, Keith Dane, a Pennsylvania State policeman, was called to the stand by the Commonwealth and interrogated about taking a statement from her and reading it aloud in a room in the Bethlehem police barracks in which there were eight or more persons, including police officers, in addition to the appellants. At that time appellants were not represented by counsel and remained mute, although they admit they heard the statement read. It is noted that the statement did not relate to the crimes for which appellants were being held, but for an alleged abortion committed by Kulik on Judy Snyder. We have already discussed the admissibility of Miss Snyder's testimony and concluded that it was admissible. However, her credibility was at issue and the apparent purpose of showing appellants' tacit admission of the truth of her statement was to convince the jury that she was credible. If the jury believed that appellants had admitted the truth of her statement as it had been read, that fact would unquestionably have influenced it in determining her credibilty and ultimately in arriving at its verdicts.

The Snyder statement was admitted into evidence on the authority of *Commonwealth v. Vallone*, 347 Pa. 419, 32 A. 2d 889 (1943), recognized by our Supreme Court in *Commonwealth ex rel. Stevens v. Myers*, 398 Pa. 23, 156 A. 2d 527 (1959), cert. denied, 363 U.S. 816, 80 S. Ct. 1254, 4 L. Ed. 2d 1156; and as late as *Levin v. Van Horn*, 412 Pa. 322, 194 A. 2d 419 (1963) ; *Chambers v.*

*Montgomery,* 411 Pa. 339, 192 A. 2d 355 (1963) ; and followed by this Court in *Commonwealth v. Staino,* 204 Pa. Superior Ct. 319, 204 A. 2d 664 (1964) ; *Commonwealth v. Reis,* 202 Pa. Superior Ct. 159, 195 A. 2d 287 (1963) ; *Commonwealth v. Gomino,* 200 Pa. Superior Ct. 160, 188 A. 2d 784 (1963), cert. denied, 375 U.S. 865, 84 S. Ct. 136, 11 L. Ed. 2d 92; and *Commonwealth v. Ford,* 193 Pa. Superior Ct. 588, 165 A. 2d 113 (1960). However, appellants contend that their silence was justified since it was consistent with their privilege against self-incrimination, and they rely on *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S. Ct. 1594 (1964) ; *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489 (1964) ; *Commonwealth v. Ford,* 199 Pa. Superior Ct. 102, 184 A. 2d 401 (1962) ; and *Commonwealth v. Towber,* 190 Pa. Superior Ct. 93, 152 A. 2d 917 (1959), to sustain their position.

When a defendant is advised of his constitutional rights to remain silent, he may remain silent, and no presumption of guilt may be raised, nor may any inference be drawn from the silence of the defendant. However, it is for the jury to determine whether he has been so advised and whether he is accepting that advice and standing on his constitutional rights when he remains silent. The testimony of Dr. Sindel shows clearly that he did not rest on his constitutional rights. On direct examination he said: "Q. Was anything said to you about your Constitutional rights? A. No, nothing was said like you hear on television, 'Anything you say now will be held against you' or anything like that. Nothing was said such as that. Q. What, if anything, happened down in the barracks, Doctor? A. Well, down at the barracks I was treated like a common criminal. I was fingerprinted, I was pictured, I wasn't allowed to go to the bathroom myself, I wasn't allowed to use the phone, I wasn't allowed to call anyone, until finally I said, 'I'm going to call Dr. Dorothy

whether you like it or not,' and this was just before we went to the Alderman. Then I was allowed to call and tell Dr. Dorothy where I was. Q. All right. At any time out there at the State Police barracks was any statement that anyone purportedly made read to you or read in a room that you were present in? A. Yes, that statement which the officer—I don't know his name; whoever read it—Sgt. Dane. The statement that Judy Snyder made was read in this room. In this group of people this statement was read. Q. After that statement was read what, if anything, transpired, Doctor? A. Oh, I remember Mr. Kulik getting up and shouting something, but they quieted him down quickly, and I just decided to keep quiet, keep my mouth shut, and let my lawyer do all the talking. Q. Did anybody at any time ask you whether you had a comment to make on this? A. No one. That's another thing that hurt. No one asked me, 'Are these charges true or false? Do you have anything to say?' With all this publicity in the papers, no one has ever asked me my version or my opinion. All this publicity in all these papers—THE COURT: Is there a question before the doctor? MR. WALKER: Yes, Your Honor. THE COURT: All right. Proceed. A. All this has gone on, and no one has ever asked me, 'What's your side of the story?' "

Kulik did not testify and the only testimony on the question of whether he had relied on his constitutional rights in remaining silent was that given by Dr. Sindel, previously quoted, and the statement of one of the arresting officers, Ritsick, that Kulik was permitted an attorney and had told his wife to call an attorney when they were leaving his house following his arrest. Under this state of the record it must be concluded that appellants were not standing on their constitutional rights when they remained mute.

However, we fail to see in this statement anything that required an answer by Dr. Sindel at the time it

was read. Except for the statement that Dr. Sindel treated Miss Snyder on her entry into his hospital and that he charged her $275 for services, including treatment for pneumonia which she developed while there, about which there is no question, there is nothing in the statement charging him with any misdeed or crime. It consists entirely of criminal charges against Kulik and conversations between her and Barbara Feraldo and between her and a nurse at the hospital, about which Dr. Sindel had no knowledge. Consequently, to have permitted the jury to infer the truthfulness of such statement by his failure to answer it was highly prejudicial to his case. Therefore, on the authority of *Levin v. Van Horn,* supra, and of *Commonwealth v. Coyne,* 115 Pa. Superior Ct. 23, 175 A. 291 (1934), which state the principle that even in criminal cases the circumstances must give rise to the duty to answer if the accused would avoid the inference of acquiescence in the assertion made in his presence, we hold that Dr. Sindel could not be held to have admitted the truth of the entire statement. The statement should not have been admitted as evidence, nor the testimony of Officer Dane relating to it. Silence is considered an admission only when the circumstances are such that one ought to speak out and does not. Silence does not form the basis for inferring an admission of the truth of statements when the facts stated are not within the knowledge of the person who does not deny them. 20 Am. Jur., Evidence, §567; 31A C.J.S., Evidence, §295.

Since the issue is narrowly drawn between lawfulness and unlawfulness in the purpose of Dr. Sindel's treatment of Barbara Feraldo and this lends importance to the proof offered by the Commonwealth to establish a plan or scheme through the testimony of Judy Snyder, we are constrained to grant a new trial on this point alone. As previously stated, if the statement is to be held truthful by Dr. Sindel's silence and Judy

Snyder is rendered credible, Dr. Sindel's efforts to refute her testimony given at the trial have been neutralized and rendered ineffective, for how then can he successfully deny what he had previously admitted.

As to Kulik, the statement charges him with the crime of abortion and not conspiracy to have Dr. Sindel perform an abortion, but there is nothing in the statement to establish a conspiracy between him and Dr. Sindel. Therefore any tacit admission by Kulik of the crime with which the statement charged him could not affect Dr. Sindel or the cases before us. However, we need not decide its effect on the defendant Kulik since we believe the ends of justice require that both appellants should be retried together and a new trial will include him as well as Dr. Sindel. Although coconspirators may be tried separately, *Heine v. Commonwealth*, 91 Pa. 145 (1879); *Commonwealth v. Brown*, 23 Pa. Superior Ct. 470 (1903), separate trials are not warranted under the circumstances of the present case.

We are also of the opinion that the black book found in the car of Kulik was inadmissible, as irrelevant in either the trial of Dr. Sindel for abortion or in the conspiracy trial of both appellants. It shows no connection between Dr. Sindel and Barbara Feraldo; nor does it indicate any joint plan or scheme between the two appellants.

We shall refrain from discussing the other questions which appellants contend were trial errors, since the cases must be retried.

Furthermore, we have reviewed the entire record and conclude that it does not justify the entering of judgment for appellants.

Judgments reversed and new trials as to both defendants awarded on both indictments.

ERVIN, P. J., and WRIGHT, J., would affirm on the opinion of the court below.