Commonwealth *v.* Dravecz, Appellant.

484

Argued March 21, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Michael V. Franciosa,* for appellant.

*Frederick I. Charles,* Assistant District Attorney, with him *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 14, 1966:

Joseph J. Dravecz appeals from the judgment of sentence imposed after his motions in arrest of judgment and for a new trial were denied. He was convicted of burglary, larceny and receiving stolen goods and was fined $100, sentenced to the Lehigh County Prison for one (1) to two (2) years and ordered to make restitution in the sum of $3,000.

Following are the relevant facts which we have taken from the opinion of Judge SCHEIRER for the court below:

"Sometime between the late afternoon of July 3 and the early morning of July 5, 1963 a trailer used for the storage of construction equipment and located on a job in Hanover Township, Lehigh County (within a short distance of the Lehigh-Northampton County line) was forcibly entered and tools such as air hammers, drills, pumps, a cutting torch and an air hose were found to be missing on July 5. Serial numbers of missing wacker type hammers were provided to the police. Prior to the dates in question and subsequent thereto, the defendant was employed as a laborer by the construction company owning the trailer.

"On December 28, 1963, two members of the Pennsylvania State Police, armed with search warrants, visited a farm owned by defendant's parents and located in Northampton County. Upon a search of the barn, the officers found four jackhammers, two pavement breakers, two wacker tampers, a pump, acetylene hose and torches. Two of the serial numbers noted at the time of the burglary were on wacker tampers found in the barn. Other items were of the type as were discovered missing in the trailer. The property stolen had an estimated value of $6,000 and the property retrieved had an estimated value of $3,000. There was evidence that the farmhouse, though being remodelled, was occupied and personal items therein such as clothing, let-

ters and checks pointed to its occupancy by the defendant. Further, the address was the same as appeared on defendant's driver's license.

"Defendant, apparently learning that he was wanted, voluntarily appeared at the State Police Barracks on December 30, 1963 and denied the burglary. He was confronted with a statement by one Stockley to the effect that in July, 1963 the defendant and another appeared at Stockley's residence in a green pickup truck carrying construction equipment including jackhammers and the defendant asked Stockley to sell the equipment. Upon this confrontation, defendant remained mute.

"On December 17, 1963, defendant, Carl Stass and Eugene Stockley appeared at a concrete construction company office in Northampton County in a green pickup truck upon which was loaded two compactors (tampering machines) and a pump. The equipment was offered for sale whereupon a company official gave a check in the sum of $450 to Carl Stass upon his assertion that the items belonged to his brother. The items then were unloaded and placed in a garage. The next morning the same three individuals returned and sought to rescind the sale because the price was inadequate. The company released the articles and received the check given the previous day. The equipment was reloaded in the green truck and transported to the farm where defendant allegedly resided. Stass said that when the items were picked up at the construction company's office he had a feeling they were stolen."

## I.

who offered no testimony at trial, contends that the evidence was legally insufficient to support a finding that he was in possession of recently stolen property.

In his argument for arrest of judgment, defendant, without which finding the verdict cannot be sustained.

Specifically, defendant argues that when stolen construction equipment is found on a farm owned by his parents five months and twenty-four days after it was stolen, a jury should not be permitted to find that (a) he was in possession of the property or (b) that it was *recently* stolen. We shall consider the question of possession first.

Defendant urges that the farm was owned by his parents, that he did not live there, and thus he could not be said to be in possession of the stolen property. "The sense of the term 'possession' in this connection is not necessarily limited to custody about the person. It may be of things elsewhere deposited but under the control of a person. It may be in a storeroom or barn when the accused has the key. In short, it may be in any place where it is manifest it must have been put by the act of the party or with his undoubted concurrence." 32 Am. Jur. Larceny §141. There was evidence at trial that defendant's parents actually lived in the City of Bethlehem and that food, men's clothing, dogs and cats were found in the farmhouse, which was being remodeled. The farm address, R. D. 5, Bethlehem, Pennsylvania, was used by defendant as his address on his driver's license. Mail and cancelled checks found there on December 28, 1963 contained the name of defendant with the address, R. D. 5, Bethlehem, Pennsylvania. Defendant's job foreman, who had been a friend of defendant for years, testified that he used to see the defendant "down on his farm. I used to go down there two or three days a week. I used to help him out." Another witness testified that he, along with the defendant, hauled construction equipment "back to the farm, Mr. Dravecz's farm." This occurred on December 17, 1963, eleven days before the property was found, when the witness and defendant rescinded a sale of the equipment to a construction company. In light of all this evidence we cannot say as a matter of

law that possession by the defendant was not established here when we consider that it is possession of large items of construction equipment that is involved.

Defendant's argument as to whether five months and twenty-four days is, as a matter of law, too long a time to qualify the property as *recently* stolen is misdirected. The issue before us in this case is not where we, as an appellate court, should fix a precise point in time and label that period "recent". "The law does not declare just what this period is; much depends upon the character of the property and the circumstances of the case." *Commonwealth v. Berney,* 28 Pa. Superior Ct. 61, 68 (1905). The issue is whether or not a jury should be permitted to consider, along with all the other evidence, that large items of construction equipment were found at the farm five months and twenty-four days after such equipment was stolen. *Commonwealth v. Dattala,* 77 Pa. Superior Ct. 320 (1921), provides the answer. In that case, involving the theft of an automobile found in Dattala's possession five months and thirteen days after it was stolen, we said at p. 322:

"Without going into a discussion of the subject as to the presumption of law arising from the possession of stolen property 'a most troublesome and fruitless controversy' says Wigmore, section 2513, and granting arguendo that the mere unexplained possession if not recent, is not sufficient to convict, we do not think under the facts presented that the court could have instructed the jury to acquit the defendant . . . We think the possession of the stolen machine although not recent, coupled with . . . circumstances which might be regarded as suspicious require the submission of the case to the jury. The possession of the stolen machine was a probative fact to be considered with the other facts in the case."

Likewise in this case, other circumstances required the submission of the case to the jury. Among them are: (1) Defendant's tacit admission that within

two weeks of the offense he, along with another person, visited his labor foreman and asked him if he could sell construction equipment of the type stolen, (2) testimony that on December 17, 1963, defendant with two other persons sold construction equipment of the type stolen and rescinded the sale the next day, taking the equipment to the farm where it was found. In addition, we cannot ignore the character of the property. *Commonwealth v. Berney,* supra; 32 Am. Jur. Larceny §142. As construction equipment, its salability and portability must be considered as factors in realistically determining the issue of recentness.

We agree with the lower court that the case had to be submitted to the jury.[1] In considering a motion in arrest of judgment, we must read all evidence actually received in the light most favorable to the Commonwealth, whether the trial rulings thereon were correct or not, and the Commonwealth is entitled to all reasonable inferences arising from the evidence. *Commonwealth v. Tabb,* 417 Pa. 13, 207 A. 2d 884 (1965). Considered in that light, the evidence is sufficient to support the verdict.

## II.

Defendant's argument for a new trial centers around a statement made by Eugene Stockley. Stockley was

---

[1] The charge on this issue of recentness was eminently fair, as the following illustrates: "Therefore, you have the period of July 3rd, 4th and 5th to the end of December, so yours is the task of determining whether the possession was so recent subsequent to the taking as to give rise to the inference of guilt just discussed. I might tell you that this element of recent possession is something that is important because the longer the time away from the theft of the property, the greater the presumption that the property was acquired in a proper manner. In other words, the more time that elapses the less possibility there is that you can make an inference that the property was stolen."

a labor foreman for Caisson Corporation, for whom the defendant worked. He was picked up by the police and on December 30, 1963 gave a signed, notarized statement to the police. At trial, after being declared a hostile Commonwealth's witness,[2] Stockley read the following question from his notarized statement:

"Will you tell us anything you know about the contractor's equipment?"

When asked to read his answer to this question, Stockley read:

"A. Yes, sometime in July, 1963 Joe Dravecz and another man by the name of Nemco—I think he comes from Phillipsburg, New Jersey—came to my house in a green pickup truck. They called me outside and showed me the contractor's equipment and asked if I could sell it for them. That same equipment I later saw down at Dravecz's barn."

Asked to read the next question, Stockley continued:

"Q. Is this the same equipment we now have at the barracks?

A. Yes."

Earlier in the trial the state policeman who had taken Stockley's statement testified that on December 30, 1963 he got Stockley and the defendant together and read Stockley's statement to the defendant. In testifying, he did not actually read the statement but quoted from it, using the third person. He then testified that after he read the statement to the defendant, the defendant "didn't do anything. He just sat there. He was mute."

The defendant argues that it was improper to allow his silence in the face of the statement read to him on

---

[2] The Commonwealth's plea of surprise was made after Stockley would not identify Dravecz at trial as one of the persons who had come to his house with construction equipment to be sold. The lower court's ruling on this is not objected to in this appeal.

December 30, 1963 to be used against him as a tacit admission of guilt under the rule of *Commonwealth v. Vallone*, 347 Pa. 419, 32 A. 2d 889 (1943). This rule provides that when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made.[3]

Defendant contends that the statement did not accuse him of a crime, was not so incriminating as to naturally call for a denial, and therefore was not admissible, citing *Commonwealth v. Sindel*, 205 Pa. Superior Ct. 355, 208 A. 2d 894 (1965). Unlike in *Commonwealth v. Sindel*, supra, where the statement concerned conversations involving other persons about which Sindel had no knowledge and thus gave rise to no duty on Sindel's part to speak, portions of this statement read to the defendant linked defendant with the stolen equipment soon after the date of the larceny. Defendant's silence in the face of this incriminating statement brought this case within the *Vallone* rule.

Thus admissible as an implied admission of the truth of any charges contained in the statement, Stockley's statement and Dravecz's failure to deny it were for the jury's consideration. We find no reversible error in either the trial judge's failure to caution the jury when the statement was read that the statement was to be considered only as impeaching evidence, no request to so caution having been made at trial, or in the charge on this point. The statement, never ad-

---

[3] The writer of this opinion has expressed his view of the tacit admission rule in a dissent in *Commonwealth ex rel. Staino v. Cavell*, 207 Pa. Superior Ct. 274, 217 A. 2d 824 (1966), but recognizes that *Commonwealth v. Vallone*, supra, is the law in this jurisdiction until changed by our Supreme Court.

mitted as an exhibit, was read to the jury not only to impeach Stockley's credibility, but to permit the jury to infer defendant's tacit admission of the charges contained therein. Under these circumstances the following charge, on which point no suggestions were submitted when the trial judge invited them, was not fundamental error:

"The Stockley statement is part of the evidence in this case. You do have a problem of credibility as to Stockley. You will remember the fact that he admitted making a statement and then his memory wasn't so good on the stand, but under the circumstances it is for you to determine whether Stockley was telling the truth from the witness stand in view of a prior inconsistent statement. In other words, he admitted making a statement previously to the State Police which involved these two defendants. On the stand, he wasn't so sure, but in view of that situation between the prior inconsistent statement and what he said on the stand, you have a problem of determining the credibility of that witness."

Judgment of sentence affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he shall have complied with his sentence or any part thereof which had not been performed at the time the appeal in this case was made a supersedeas.

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

I concur in the finding of the majority that there was sufficient evidence to submit this case to a jury. However, I would grant a new trial, because I believe that the tacit admission should not have been admitted into evidence for the reasons set forth in my dissenting opinion in *Commonwealth ex rel. Staino v. Cavell,* 207 Pa. Superior Ct. 274, 217 A. 2d 824 (1966).