Commonwealth *v.* Ford, Appellant.

Argued September 12, 1960. Before GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ. (RHODES, P. J., absent).

*Lawrence Goldberg,* for appellant.

*Domenick Vitullo,* Assistant District Attorney, with him *Paul M. Chalfin,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for Commonwealth, appellee.

OPINION BY WOODSIDE, J., November 16, 1960:

Clarence Ford took this appeal from a sentence for rape imposed after a jury had found him guilty, and the court below had dismissed his motions for a new trial and in arrest of judgment. Three other defendants (Terry, Carter and Morris) were tried and con-

victed at the same time, but only Ford appealed. The appellant is pressing only his motion for a new trial.

The evidence shows that Diane, a twenty year old college junior, left her home in West Philadelphia at 9:30 o'clock New Year's Eve intending to join a girl friend in Germantown. At the intersection of Vine and Edgewood Streets, she was grabbed from behind by a man who placed his hand over her mouth and forced her into the front seat of an automobile driven by a man later identified as Terry. A man, later identified as Ford, sat on the other side of her. Two men, later identified as Morris and Carter, were in the back seat. The car was driven to a lonely dirt road in the vicinity of the Philadelphia Airport. There the car was parked, and the girl's arms and leg were held in turns by two of the defendants while each of the four had intercourse with her against her will. She screamed and blew the car's horn several times on the way to the scene and while there, until she became fearful of the defendants' threats of violence. While returning to West Philadelphia, Ford urged her not to tell any person as it would only make her friends "look down" on her. Prior to being taken into the car she did not know any of the defendants.

Upon being released by the defendants, she went immediately to her friend's home in Germantown, and told what had happened. She was taken to the hospital, and her parents and the police were called. An examination made at the Philadelphia General Hospital showed sperm cells present in her person. A few days later Terry and Ford were taken into custody and positively identified by Diane at a police lineup of five men. Later the other two were arrested and identified.

At the trial Diane identified the defendants as her assailants. Terry testified that Ford, Carter, Morris

and he picked up Diane and had intercourse with her, but contended that it was consensual. Carter, Ford's cousin, testified that he was too drunk and sick that night to know what happened. Morris testified that he, Carter, Terry and another man had intercourse with the girl, but said she agreed to it. He testified that he did not know the fourth person who accompanied them, but that it was not Ford.[1] The appellant did not testify, but attempted to establish an alibi by witnesses whom the jury evidently did not believe.

The appellant and the other three defendants were indicted for rape on another girl later the same night. At the request of the defendants, the trials on the two indictments were separated.

The appellant advances seven reasons why he should be granted a new trial. None has merit.

First, he objects to the presence at his trial of the other girl whom the defendants allegedly raped the same night that they raped Diane. He says references were made to the other charge against the defendants. All such "references" were insignificant, as for example, the following question by the district attorney of which appellant complains: "Limiting yourself to the occurrence which we have before us here—that is the affair involving Diane . . ." The other girl, for whose rape the four defendants were indicted, was

---

[1] While telling his story on the witness stand, Morris testified, "Then Ford—not Ford, I didn't know this other guy, they been saying Ford—this other guy, he gets out of the car . . ." Later, when Morris was before the court for sentence, he admitted that he had not told the truth, and that Ford was the "unknown" man, and that all four defendants had intercourse with Diane against her will. Counsel for appellant complains of the reference made to this by the court below in its opinion, while he gratuitously offers information in his brief relating to lie-detector tests. Of course, the statement of Morris while being sentenced has no bearing on the question of a new trial now before us.

called as a witness and asked only whether she saw the appellant the night of the alleged rape of Diane and whether he called himself "Johnnie". (Diane had said Ford called himself "Johnnie", and his witnesses had testified that they never knew him to use that name.) The appellant thinks it was error to permit the other alleged victim to testify. He was fortunate that the Commonwealth limited its interrogation of her to this. See *Commonwealth v. Ransom,* 169 Pa. Superior Ct. 306, 82 A. 2d 547 (1951); *Commonwealth v. Williams,* 307 Pa. 134, 148, 160 A. 602 (1932); *Commonwealth v. Brooks,* 355 Pa. 551, 50 A. 2d 325 (1947).

The appellant's second and third points involve his failure to deny his guilt when accused at the police station by Diane of being one of those who raped her, and when read Terry's statement which said that the appellant had intercourse with Diane that night.

In *Commonwealth v. Vallone,* 347 Pa. 419, 32 A. 2d 889 (1943) the court said on p. 421: "The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made." This has been recognized as the law in the recent cases of *Commonwealth ex rel. Stevens v. Myers,* 398 Pa. 23, 25, 156 A. 2d 527 (1959); *Commonwealth v. Bolish,* 381 Pa. 500, 523, 113 A. 2d 464 (1955); *Commonwealth v. Markwich,* 178 Pa. Superior Ct. 169, 173, 113 A. 2d 323 (1955).

If the accused person claims his privilege against self-incrimination when he is faced with incriminating statements, his failure to deny such statements cannot be taken as an implied admission of their truth. Wheth-

er the failure to deny the incriminating statements was the result of a claim against self-incrimination can become a question of fact for the jury. *Commonwealth v. Towber,* 190 Pa. Superior Ct. 93, 96, 97, 152 A. 2d 917 (1959).

The appellant contends that the Vallone rule was applied to his failure to deny his guilt at the police station after he had claimed his constitutional privilege against self-incrimination. It appears that Ford was advised of his constitutional rights by a police officer and by his boxing manager who was secretary to a lawyer, and later by his counsel. The Commonwealth argues that he made no claim against self-incrimination until after the identification and the reading of Terry's statement to him. For reasons hereafter stated, we do not consider it necessary to determine the time when the claim against self-incrimination was made.

The record shows that Diane identified the appellant and Terry at the police station. A police officer testified that when she did so, "The defendant Ford made no statement," but "The defendant Terry I believe at that time denied it but then he later admitted being part of this particular occurrence—being there on the scene." Terry later gave a statement, reduced to writing, admitting intercourse with the girl and involving Ford. The jury was warned numerous times that this statement could be used only against Terry. The officer testified that "Terry's statement was read to Ford—" but was stopped by objection from Ford's counsel. Later when asked, "What did Ford say to you?" the officer answered, "Well, to my knowledge he did not say anything regarding this incident here." The evidence shows, however, that Ford did deny to the officer that he was with Terry on New Year's Eve.[2]

---

[2] When first questioned Terry had used Ford as an alibi.

We need not pass upon whether this constituted a waiver of his constitutional privilege, so that his failure to deny incriminating statements made at approximately the same time could be used against him.

It must be noted that the four defendants were being tried together, and that the circumstances of their identification at the police station were admissible. The police officer was testifying about the remarks, statements, admissions, and explanations made at the police station by the defendants. That Ford made none was relevant. The officer's testimony standing alone was not prejudicial to Ford.

The weakness of the appellant's contention on this point is primarily in the fact that the court never applied the Vallone rule to this case.[3] Our attention has been called to no place in the charge from which it could be inferred that the jury could consider the refusal of Ford to reply to any accusation as an admission of guilt. If there is any inference that could be drawn on this point from the charge, it would be that Ford was under no duty to explain or to deny *any* accusation. Although not referring to Ford's refusal to deny his guilt at the police station, the court did instruct the jury that ". . . in no way are you to interpret or construe the exercise of this right not to testify as an admission of guilt . . ."[4]

During the argument of the district attorney, it appears that he was interrupted by an objection made by Ford's counsel. The district attorney said he was "commenting about the fact that Ford failed to make

---

[3] For the views of the writer of this opinion on the limited use to be made of the Vallone rule see the dissent in *Commonwealth v. Markwich*, supra, 178 Pa. Superior Ct. 169, 174, 113 A. 2d 323 (1955).

[4] Contrast this with the charge reported in *Commonwealth v. Towber*, supra.

a denial at the time the allegations which are in Terry's statement were made." The trial judge did not consider the district attorney's remarks as objectionable, and said, "Well, I will permit Mr. Fitzpatrick to continue his argument, and if there is anything improper, I will caution the district attorney to desist. I will hear what he says." There were no further objections on this point, and nothing further concerning the district attorney's remarks were made a part of the record.

In the light of the charge, and the lack of anything more specific in the record concerning the district attorney's remarks, we can not conclude that the district attorney's argument was so prejudicial to the appellant that a new trial should be granted.

We shall refer only briefly to the appellant's fourth, fifth, sixth and seventh reasons for a new trial, as none has sufficient merit to discuss at any length.

The fourth contention is that the police officer should not have been permitted to testify that when Diane appeared at the police station the day after the alleged rape, he "observed her hair to be slightly disarranged and observed her condition to be slightly dulled." This was in answer to a question on redirect examination: "What did you observe about her?" after counsel for Ford had himself first questioned the officer about Diane's appearance. The contention merits no discussion.

The five lines in appellant's brief devoted to the fifth contention, and a careful reading of Terry's testimony on the pages indicated by appellant as containing objectionable matter, reveal no error.

The sixth contention is that the trial judge erred in charging the jury, "Your verdict must be unanimous—that is all twelve must agree." Appellant contends this charge "is erroneous because it precluded

the possibility of a hung jury." A trial judge need not charge jurors specifically that they may disagree.

When the jury returned from deliberation for further instructions, and the district attorney's request to have part of the testimony read to the jury was refused, the court charged: "Members of the jury, I think you have got to determine just what the facts are in this case. As I said to you all through my charge, it is for you to determine what the facts are . . . . I sincerely hope you can agree on all of the matters which have been submitted to you." Appellant's objections to the use of the word "got" in the first sentence and "all" in the last sentence merit no discussion.

We have carefully examined the record of nearly 800 pages, and are convinced that Judge DOTY, who tried this case, was eminently fair to the appellant in his rulings, his charge and in all other matters connected with the trial. The evidence against the appellant is overwhelming, and we can find no errors which would justify the granting of a new trial.

Judgment of sentence affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.