Commonwealth *v.* Dessus, Appellant.

348

Argued March 20, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Domenick Vitullo,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Roger F. Cox* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Montgomery, J., June 13, 1969:

This was a homicide case. The defendant-appellant was found guilty of murder in the first degree on Indictment No. 290 and was sentenced to life imprisonment by the jury therefor. On all other indictments on which he was adjudged guilty by the jury, the defendant has appealed from the sentences imposed by the court as follows: Indictment No. 283, Rape, Sentence of 10 to 20 years; No. 284, Rape, Sentence suspended; No. 285, Rape, Sentence of 10 to 20 years, commencing at the expiration of sentence imposed on No. 283; No. 286, Burglary, Sentence of 10 to 25 years, commencing at the expiration of sentence on No. 285; No. 287, Conspiracy, Sentence suspended; No. 288, Assault and Battery and Aggravated Assault and Battery, Sentence suspended (The jury found defendant not guilty of assault and battery with intent to murder); No. 289, Assault and Battery, Assault and Battery with intent to Murder, Sentence suspended; No. 292, Aggravated Robbery, Sentence suspended; and No. 293, Aggravated Robbery, Sentence suspended.

The appellant, on this appeal, has preserved seventeen points of error, which were denied by the court below on its refusal to grant appellant's motions for a new trial and in arrest of judgment. No motions were filed in the homicide case. Appellant contends and advances seven alleged violations of his rights before trial, two violations during the trial, five errors on admittance of evidence, and two errors in the court's charge to the jury.

The events which ultimately led to the life imprisonment of this appellant and these appeals occurred between the hours of midnight and 4:00 a.m., April 3, 1966, in the City of Philadelphia. Appellant, age 20, John Burgess, age 23, and James Stukes, age 20, having conspired to commit burglary, broke into the household at 5120 Chester Avenue, Philadelphia, Pennsylvania. They tore from their slumber Mrs. Lena Alexandroff, 79 years of age, her daughter, Mrs. Natalie Tuchar, 44 years of age, and Paula Tuchar, daughter of Mrs. Tuchar, 14 years of age, beat, raped, and robbed them, and then murdered Mrs. Alexandroff, for she died on April 22, 1966 as a result of her injuries. A full description of the shambles created by these men need not be republished here; but because it is pertinent on this appeal, we narrate a portion of the decedent's ordeal and some events subsequent to these crimes.

Shortly after the three men left the house, the police were alerted and the area was carefully searched. Appellant and John Burgess were seen on the street about three blocks from the scene of the crimes. When a police car approached, appellant ran and was chased by an officer, who caught up with him within a block. During the chase, appellant dropped a radio and a raincoat. The radio was identified as one of the objects taken from the victims' home.

At about 4:00 a.m. Paula Tuchar was heard to shout for help from a third floor window. Shortly after she called out, Burgess came to the window, looked out, and shouted that somebody had called the cops. He dragged Paula downstairs to the kitchen. There she saw her mother, appellant, and Mrs. Alexandroff, who was lying on the floor in a pool of blood. She had blood all over her face and hair with remains of egg shells in her hair. The room was spattered with blood also. Paula and her mother were pushed into the cellar. The police arrived at about 4:20 a.m. and

found Mrs. Alexandroff lying motionless on the kitchen floor. When she began to move a policeman assisted her into a sitting position. She stood briefly, then collapsed, and was carried into the living room and placed into a chair by an officer. They placed Mrs. Alexandroff on a stretcher and took her, along with her daughter and granddaughter, to Mercy-Douglas Hospital, at 50th Street and Woodland Avenue, arriving there at about 4:40 a.m. Hospital records show that Mrs. Alexandroff was seen in the accident ward at 4:45 a.m. An intern who examined Mrs. Alexandroff testified that she was conscious but not fully alert, and complained of pain in her right thigh. There were multiple hematomas and contusions on her face.

Father Borichevsky arrived at Mercy-Douglas Hospital between 5:00 and 5:30 a.m. Mrs. Alexandroff and Mrs. Tuchar were lying on beds in the emergency room, side by side. As Father Borichevsky came into the emergency room, Mrs. Alexandroff was repeating, "We have been beaten and we have been robbed. Why did they do this?" Her statements about being raped were made within ten to fifteen minutes later. During this time Mrs. Alexandroff was strapped to the litter and was being calmed and restrained from moving by Mrs. Tuchar, a nurse and a doctor. She was speaking mostly in Russian and Father Borichevsky, fluent in this language, had no difficulty in understanding what she was saying. The identification of appellant by Mrs. Alexandroff in the emergency room at the Mercy-Douglas Hospital was made after Father Borichevsky heard her first utterances, stated above, and immediately before she stated in response to questions that she had been raped.

At the trial Richard Brandon testified that on or about May 3, 1966, he was in a cell with appellant and approximately 20 other persons at the Detention Center. A man in the cell said to appellant, "They are

going to burn you for the rape and murder charge." Appellant replied, "I don't care, I had my fun that night. I made my rounds on all three of them bitches."

Prior to the trial of this case, which commenced on March 20, 1967, almost one year after the crimes were committed, the appellant presented several petitions. The bases for these petitions were alleged prejudicial publicity which his impending trial, the impending trial of Stukes,[1] and the trial of Burgess[2] had received. He attached exhibits of newspaper articles to his brief in support thereof. He contends that the prior publicity was sufficient grounds to support his petition for continuance and his petition to have more funds to hire an investigator to investigate the grand jury for bias because of the prejudicial publicity. These petitions were denied by the lower court.

We shall first examine the appellant's contention that the trial judge abused his discretion in refusing to grant a continuance. A continuance or change of venue is not required merely because the case has received publicity from the press, *Commonwealth v. Green,* 396 Pa. 137, 151 A. 2d 241 (1959), but the question is whether publicity was ". . . so inflammatory and biased in factual presentation as to cause, or be evidence of, public prejudice or hysteria." *Commonwealth v. Capps,* 382 Pa. 72, 77, 114 A. 2d 338, 341 (1955). We have found that nearly half the newspaper articles submitted by appellant as exhibits were published during April, 1966, that they were not more inflammatory than the average news writing on such reprehensible crimes, and that his claim of bias emanating therefrom is unfounded. Furthermore, the trial of appellant was held nearly a year after the crimes

---

[1] James Stukes pleaded not guilty, was tried before a jury after the Dessus trial, found guilty, and sentenced to life imprisonment.

[2] John Burgess pleaded guilty to murder generally, was adjudged guilty of first degree murder, and sentenced to death.

were committed. In the *Capps* case, where the defendant was convicted of the rape-murder of a fifteen year old girl, the trial was held but three months after the crime was committed. There are little, if any, facts in this case similar to those in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966), relied on by appellant. We conclude that the trial court did not abuse its discretion in this respect.

To support his petition for funds to have an investigator investigate the grand jury, appellant advanced the theory that, since he is not entitled to a voir dire examination of grand jurors, *Commonwealth v. Dessus*, 423 Pa. 177, 224 A. 2d 188 (1966), he could effectively exercise his right under Rule 203 of the Pennsylvania Rules of Criminal Procedure of challenging the array or an individual grand juror, who ". . . may be challenged on the ground that he is not legally qualified or that a state of mind exists on his part which may prevent him from acting impartially," only by having an out-of-court investigator to inquire into the possibility that any one or all of them had been biased by the adverse publicity his case received. We know of no precedent in Pennsylvania which allows a grand juror to be challenged for bias and we shall not here so enlarge the rule. The Federal Courts do not allow it. *Estes v. U. S.*, 335 F. 2d 609 (1964). In any case, the Act of March 22, 1907, P. L. 31, §1, as amended by the Act of November 19, 1959, P. L. 1401, §1, 19 P.S. §784, provides only for the payment of investigators needed by counsel for an indigent defendant in a homicide case.

Before trial the appellant had filed petitions for more funds to hire a psychologist and for the suppression of evidence, which we shall consider in our discussion of alleged trial errors.

The remaining alleged pretrial errors advanced by the appellant concern the selection of the petit jury

which heard his case. He raises three questions. First, the appellant moved for the withdrawal of a juror on the basis that one juror, Mrs. Riva A. Gordon, on voir dire examination testified that there had been some discussion of the case among the jurors in violation of the trial court's instructions to the jury panels. Upon further questioning, Mrs. Gordon revealed that the "discussion of the case" consisted of remarks about who had been selected to serve on the jury, who would be next, and that the facts of the case as outlined by the attorneys and the trial judge had not been discussed among the prospective jurors or among those already selected. Since there is no evidence that the jurors were actually discussing the substantive facts of the case, the trial court did not abuse its discretion in refusing appellant's request.

Second, appellant complains of not having been allowed by the trial court to question one prospective juror on whether or not he knew of the fate of John Burgess. The question of whether the defendant might have been prejudiced by this denial is moot since that prospective juror was not seated.

Finally, appellant contends that the trial court's order, which was entered after the jury had been sworn and before trial began, withdrawing the defendant's guilty pleas to Indictment No. 288, which charged him with assault and battery and aggravated assault and battery on Mrs. Alexandroff, and entering not guilty pleas thereon, improperly foreclosed his right to interrogate the jurors on whether or not they had knowledge of those guilty pleas. This situation is of the defendant's own making. At the arraignment the court accepted these guilty pleas, which apparently were made by appellant as the groundwork for the unsuccessful strategy of avoiding a conviction on the murder indictment by entering a plea of autrefois convict thereto. Appellant also complains that the entry of not

guilty pleas to this indictment just before trial violates Criminal Procedure Rule 317(b), which requires a period of ten days between arraignment and trial. On both grounds, we find no prejudice to the appellant. The arraignment was held on February 14, 1967, and the voir dire examination of prospective jurors commenced on March 6, 1967, which was more than the time required by Rule 317(b) for the preparation for trial by the appellant. Furthermore, Criminal Procedure Rule 320, which states, "At any time before sentence the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty substituted", puts all criminal defendants on notice that a plea of guilty can be changed by order of court at any time and that they must, therefore, prepare their defense and questions for voir dire examination of prospective jurors accordingly.

The appellant also contends that the trial court committed reversible error in five respects on admitting testimony over his objections.

The first two points involve the testimony of Father Borichevsky, first, as to the statements made by the decedent, Mrs. Lena Alexandroff, at the hospital. In addition to the statement, "We have been beaten and we have been robbed. Why did they do this?". Father Borichevsky testified that ten to fifteen minutes after the above statement had been made by the decedent, in response to a question specifically put to her by the police on whether she had been raped, she responded, "Yes". Secondly, he was allowed to testify on her identification of the appellant at the police lineup which was conducted at the hospital just before her acknowledgement of having been raped. The appellant was brought into the hospital room, along with two other men, one of whom the decedent did not identify. All of this testimony was admitted by the trial judge as part of the res gestae (spontaneous declaration) exception to the hearsay rule of exclusion.

The spontaneous declaration or res gestae exception to the hearsay rule of exclusion of testimony has very recently been reiterated and so fully summarized by our Supreme Court in *Commonwealth v. Edwards*, 431 Pa. 44, 244 A. 2d 683 (1968), that we feel it unnecessary to repeat the rule here. However, in applying the res gestae rule, the court must wisely exercise judicial discretion in determining whether a challenged expression is in fact part of the transaction and, therefore, admissible, or is a narrative of past events made after the transaction may be said to be fully ended and, therefore, inadmissible. *Commonwealth v. Logan*, 361 Pa. 186, 63 A. 2d 28 (1949). We feel that such judicial discretion has been well exercised here because the circumstances under which the challenged declarations were made fully meet the well established rules of this jurisdiction. The evidence in this case is overwhelmingly convincing that Mrs. Alexandroff's statements, made within one hour after the crimes were committed, were made long before her emotional shock and the spontaneity of her utterances about the incident itself could have become dissipated. "Victims of unexpected assaults are not likely while suffering the agonies of a murderous assault just made upon them to fabricate a lie as to the identity of their assailant." *Commonwealth v. Harris*, 351 Pa. 325, 336, 41 A. 2d 688, 694 (1945). Therefore, their admittance was proper under the res gestae exception to the hearsay rule of exclusion of evidence.

Aside from the alleged defect in the identification testimony under the hearsay rule, appellant further complains that the police lineup was improper because no counsel for defendant was present at it and because it denied him due process. The situation in this case was somewhat similar to the circumstances in *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed 2d 1199 (1967), which was the case whereby the Supreme Court

of the United States upheld the procedure of bringing the defendant into the hospital handcuffed to the policeman, and the homicide victim was asked, "Is this the man?" Appellant's claim for relief under the Sixth Amendment, requiring the right of counsel at lineups, is answered by the Supreme Court in *Stovall v. Denno,* supra, which held that the cases of *U. S. v. Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967), which first established that the right of defendant for counsel at lineups was the law of the land under the Sixth Amendment, were not to be applied retroactively from June 12, 1967, the day these decisions were handed down, but to be prospective only from that date. Appellant was arrested and identified on April 3, 1966. We again can look to *Stovall v. Denno,* supra, for the answer to appellant's further contention, that the procedure of his lineup was a denial of his right to due process under the Fourteenth Amendment. In that case the Supreme Court of the United States stated, at page 302, "However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative." In the instant case, it was imperative that the appellant be shown to Mrs. Alexandroff at the hospital. We therefore hold that these arguments of the appellant cannot be sustained.

Appellant made a pretrial motion to suppress and at trial objected to the introduction of the evidence of the stolen coat and radio found in his possession at the time of his arrest on the grounds that there had been no probable cause for his arrest. The rule in such a situation was laid down in *Beck v. Ohio,* 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964), also cited by

appellant, at page 91: "The constitutional validity of the search . . . must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." The police who arrested appellant were given a description by radio of "two male Negroes, five feet ten inches tall, one wearing a dark coat and the other a dark tan coat." Immediately after this description was received the officer saw a man on 51st Street who agreed to go with them for identification purposes. At the intersection of 50th Street and Woodland Avenue, one or two minutes after they had left the scene of the crime, the officers observed appellant and Burgess walking east on Woodland Avenue, within several blocks of the victims' house. The officers stopped next to the men and motioned for them to approach the car. Appellant was wearing a dark suit and carrying a tan trench coat under his arm; Burgess was wearing a dark coat and dark trousers. Officer Scheld got out of the car and, as Burgess began to get in, appellant ran down Woodland Avenue. At 50th and Woodland he threw away the coat and radio allegedly taken from the house. Officer Scheld then apprehended the appellant who was lying prone alongside a car. We conclude that under these circumstances the arresting officers had probable cause for arresting appellant. It logically follows that the search of the appellant thereafter was valid.

Appellant objected to the admittance of the testimony of Richard Brandon, as quoted above. This testimony clearly would be admissible under the admis-

sion exception to the hearsay rule of exclusion since it is a voluntary statement made by the defendant relating to the occurrence for which he was being tried, *Commonwealth v. Wentzel,* 360 Pa. 137, 61 A. 2d 309 (1948); but appellant attacks it only under the principles outlined by our Supreme Court in *Commonwealth v. Turner,* 389 Pa. 239, 133 A. 2d 187 (1957). We find that case clearly distinguishable, since the admission or confession testimony in that case was offered by two detectives whose testimony was so contradictory as to what the defendant had said and which they had overheard, was ". . . inherently so unreliable as not to justify a finding beyond a reasonable doubt that the conversation did actually occur . . ." pages 264-265, A. 2d 199, as the officers had related it, and that the conviction of the defendant could not be based on such evidence alone. The circumstances in the instant case are entirely different, where only one witness testified, and other evidence submitted at the trial of appellant could have supported his conviction.

Appellant contends that reversible error was committed in admitting hearsay testimony of Dr. Kenneth A. Kool, the Commonwealth's psychiatrist, who was permitted to testify concerning the results of a psychological test administered to appellant by a psychologist, Dr. Robert Middleton, who did not testify. Prior to trial appellant's request to be alloted funds to hire a psychologist was denied although his request to have funds to hire a psychiatrist was granted. At trial appellant's psychiatrist, Dr. James D. Nelson, testified that appellant was a psychopathic delinquent, unable to deliberate before he acted and therefore unable to know the nature and quality of his act. Dr. Nelson had the results of four psychological tests administered to appellant prior to 1961 on which to base his opinion, but Dr. Middleton's test naturally had been administered within the year before trial. We agree with

the Commonwealth that the admission of the otherwise hearsay testimony concerning Dr. Middleton's examination was not error in view of the fact that it came into evidence in response to questions by appellant's own counsel. As a general rule a party is not entitled to have stricken incompetent evidence which he himself elicited. *Commonwealth v. Ford,* 193 Pa. Superior Ct. 588, 165 A. 2d 113 (1960). We have difficulty following appellant's reasoning on his further contention that the ex post facto admittance into evidence of the results of Dr. Middleton's psychological tests constituted a denial of due process because he was denied funds to hire a psychologist before trial. However, any doubts on this matter are resolved by the fact that the appellant's own psychiatrist, Dr. Nelson, testified at trial that he needed no further psychological tests.

Appellant advanced two additional arguments about the trial, one on the sequestration of witnesses, and the other on the seating of the members of the press at the trial, both of which we find without merit. The Commonwealth admits that one of the witnesses at trial inadvertently violated the court's orders on sequestration of witnesses; but any defect therein was cured by the fact that the witness was not allowed to testify.

Although we recommend that the public and members of the press not be seated close to the defendant, as here contended, so that no suspicion of prejudice to the rights of defendants be aroused, we acknowledge that such matters are within the purview of the trial court, 12 P.S. App. R.C.P. 223(a)(4), and should not be interfered with unless there is a gross abuse of discretion. Since the members of the press were seated thirty to forty feet from the jury, maintained their seats, and created no disturbances in this case, we do not find here the "carnival atmosphere" as in *Sheppard v. Maxwell,* supra, to the prejudice of the appellant.

Appellant took three exceptions to the court's charge to the jury. He contends that the court erred in charging the jury that the defendant had the burden of proof concerning his defense of insanity and it was necessary for the defendant to prove the same by a fair preponderance of the evidence. Appellant's contention is incorrect since in Pennsylvania insanity is held to be an affirmative defense and the burden of proof is on the defendant to prove insanity by a fair preponderance of the evidence. *Commonwealth ex rel. Cummins v. Price,* 421 Pa. 396, 218 A. 2d 758 (1966).

The court refused the following point for charge: "If from the testimony you have a reasonable doubt as to whether or not the defendant was capable of knowing the nature and quality of his act you must resolve that doubt in the favor of the defendant and find him not guilty of all charges." An almost identical point for charge was held to be properly refused in *Commonwealth v. Sushinskie,* 242 Pa. 406, 89 A. 564 (1913), on the grounds that evidence which creates a mere doubt or a reasonable doubt as to defendant's sanity and does not fairly preponderate is insufficient to sustain the burden resting upon him to prove insanity as a defense. Since the court's instructions on the issue of sanity were otherwise proper, we do not find error in the refusal of this point for charge.

Finally, the appellant claims that the court erred in refusing to grant his point of charge on fornication. Appellant acknowledges that no error is committed if a point for charge on fornication is not submitted in a rape case. *Commonwealth v. Friday,* 171 Pa. Superior Ct. 397, 90 A. 2d 856 (1952). On the other hand, appellant can claim no prejudice where, as in the instant case, no indictment was brought for fornication and no evidence was presented thereon so that, ". . . if under the evidence given the defendant in a criminal case must either be guilty of the grade of offense charged

or entitled to an acquittal, the jury need not be instructed as to lower grades to which the evidence does not relate." 44 Am. Jur., Rape, §124. There is no duty on a trial judge to charge upon law which has no applicability to presented facts. *Commonwealth v. Jordan*, 407 Pa. 575, 181 A. 2d 310 (1962). We have found no facts in this case which would give rise to the need to charge on fornication. The appellant would benefit if the jury would not find rape and would not hold him on fornication under a charge thereon.

The trial court erred by invoking the new Act of May 12, 1966, P. L. 1 (Special Session), 18 P.S. §4721, which increased the maximum penalty for the crime of rape when, on April 3, 1966, when these crimes were committed, the penalty for rape was "a fine not exceeding seven thousand dollars ($7,000), or . . . imprisonment, by separate or solitary confinement at labor, or by simple imprisonment not exceeding fifteen (15) years or both." To impose the higher sentences now on appellant would be to give effect to an ex post facto law. *Commonwealth ex rel. Wall v. Smith*, 345 Pa. 512, 29 A. 2d 912 (1942).

We may amend excessive sentences. *Commonwealth ex rel. Rouzer v. Claudy*, 178 Pa. Superior Ct. 106, 113 A. 2d 321 (1955). However, so that the trial court may exercise discretion in selecting the minimum sentence, if any, on the rape indictments on which excessive sentences were erroneously imposed (sentence was suspended on Indictment No. 284 for rape), we shall remand them for resentencing.

Judgments affirmed on all indictments except Indictments Nos. 283 and 285, which are remanded for resentencing in accordance with this opinion.